Berke, et al. v. Presstek, et al.    CV-96-347-M    03/30/99

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Bill Berke, et al.,
    Plaintiffs

v.                                               Civil No. 96-347-M
                                                 MDL No. 1140
Presstek, Inc., et al.,
    Defendants


**ORDER ON MOTION TO DISMISS**

Plaintiffs bring this prospective class action[1] on behalf of all persons who purchased or otherwise acquired the common stock and/or options to purchase the common stock of defendant Presstek, Inc. ("Presstek") between November 7, 1995, and June 20, 1996, inclusive (the "Class Period"). Plaintiffs' Second Consolidated Amended Class Action Complaint (the "Second Amended Complaint" or the "complaint") alleges that Presstek and a number of its officers and directors[2] (the "individual defendants")

---

[1]A class has not yet been certified.

[2]Defendant Robert Howard is the founder of Presstek and has served as a director since its founding in September, 1987, and Chairman of the Board since June, 1988. Defendant Lawrence Howard, Robert Howard's son, has served as a director of Presstek since its founding, and as Vice Chairman of the board from November, 1992, until February, 1996. Defendant Richard C. Williams was, at the start of the class period, Chief Operating Officer and Executive Vice President. From February 23, 1996, through the end of the class period, Williams was Presstek's Vice Chairman and Chief Executive Officer. Defendant Robert E. Verrando was, as of the commencement of the class period to February 23, 1996, Executive Vice President of Presstek; thereafter, he was Presstek's President and Chief Operating Officer. Defendant Frank G. Pensavecchia was Presstek's Vice President during all times relevant to this action. Defendant Glenn J. DiBenedetto is a certified public accountant and was, at all relevant times, Chief Financial Officer of Presstek. Defendants Bert Depamphilis and Harold N. Sparks were, at all

engaged in a scheme to defraud purchasers of Presstek stock in violation of Sections 10(b), 20(a) and 20A of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78(j)(b), 78t(a) and 78t-1), Rule 10b-5 promulgated by the Securities Exchange Commission ("SEC") (17 C.F.R. § 240.10b-5), and New Hampshire common and statutory law. More specifically, plaintiffs allege that the defendants,[3] through material misrepresentations and omissions, artificially and fraudulently inflated the price of Presstek common stock during the class period, and that the individual defendants engaged in illegal insider trading during the class period. Presently before the court is defendants' motion to dismiss pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

## Standard of Review

A Rule 12(b)(6) motion is "one of limited inquiry, focusing not on 'whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

relevant times, directors of Presstek.

[3]The complaint also named as defendants the Cabot Market Letter ("CML"), an investment newsletter; its publisher, Cabot Heritage Corporation ("CHC"); CML's editor and CHC shareholder and control person Carlton G. Lutts; and Carlton Lutts's son Timothy W. Lutts, who was also a shareholder and control person of CHC and an author and editor of CML. Some or all of these parties are sometimes referred to in the several complaints at issue as the "Cabot Newsletter Defendants" or the "Cabot Defendants." The claims against these defendants were dismissed without prejudice on plaintiffs' motion, granted May 18, 1998. Thus, the only defendants remaining in this action are Presstek and the individual defendants. Presstek and the individual defendants are sometimes referred to in the several complaints at issue as the "Presstek Defendants."

2

claims.'" Schaffer v. Timberland Co., 924 F. Supp. 1298, 1305 (D.N.H. 1996) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Dismissal is generally appropriate only when the plaintiff appears able to prove no set of facts that would entitle him to relief. See Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997). In ruling on a motion to dismiss, the court takes the allegations in the complaint as true and draws all inferences therefrom in favor of the plaintiffs. See Lucia v. Prospect Street High Income Portfolio, 36 F.3d 170, 174 (1st Cir. 1994).

Because plaintiffs' complaint alleges fraud, it must meet the heightened requirements of Federal Rule of Civil Procedure 9(b). See Schaffer, 924 F. Supp. at 1305. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). But see 15 U.S.C.A. § 78u-4(b)(2)(requiring, in certain cases, the pleading of specific facts giving rise to inference that defendant acted with the state of mind required for the particular violation of the securities laws alleged).

Plaintiffs' complaint must also meet the requirements of the Private Securities Litigation Reform Act, codified at 15 U.S.C. § 78u-4, which provides in part:

(1) Misleading statements and omissions

   In any private action arising under this chapter in which the plaintiff alleges that the defendant -

3

> (A) made an untrue statement of a material fact;
> or
> (B) omitted to state a material fact necessary
> in order to make the statements made, in the light
> of the circumstances in which they were made, not
> misleading;
> the complaint shall specify each statement alleged to
> have been misleading, the reason or reasons why the
> statement is misleading, and, if an allegation
> regarding the statement or omission is made on
> information and belief, the complaint shall state with
> particularity all facts on which that belief is formed.
>
> (2) Required state of mind
>
> In any private action arising under this chapter in
> which the plaintiff may recover money damages only on
> proof that the defendant acted with a particular state
> of mind, the complaint shall, with respect to each act
> or omission alleged to violate this chapter, state with
> particularity facts giving rise to a strong inference
> that the defendant acted with the required state of
> mind.

15 U.S.C.A. § 78u-4(b)(1)-(2) (West 1997).

<u>Background</u>

The following facts are alleged in the complaint. Presstek, a Delaware corporation with its main executive offices in Hudson, New Hampshire, is engaged in the development of printing technology. It claims to have developed a non-photographic digital imaging and printing plate technology, called PEARL(R), that allows direct scanning of images from a computer onto a printing plate, making the generally-used chemical developing process unnecessary. The primary customer for Presstek's imaging technology is Heidelberger Druchmaschinen A.G. ("Heidelberg"), a printing press manufacturer.

In May 1995, Heidelberg began marketing a new printing press, called Quickmaster, which utilized the PEARL(R)

technology. After customers testing Quickmaster reported problems, Heidelberg told Robert Howard that it would delay mass commercial distribution of Quickmaster until the problems could be solved. Accordingly, the parties agreed that Presstek would reduce its shipment of PEARL(R) systems to Heidelberg. Because this reduction in sales would reduce Presstek's anticipated earnings by roughly 7 to 9 million dollars, Heidelberg agreed, in addition to other adjustments to the terms of the parties' dealings, to pay Presstek $7 million (in monthly installments) in 1996.

Plaintiffs allege that defendants artificially inflated the price of Presstek stock during the class period by making a number of false statements, or misleading statements, or omissions. The statements or omissions are alleged to have been misleading due to one or more of the following: (1) failure to disclose problems test users had encountered with Quickmaster; reduction in shipments to Heidelberg; or, the accommodating $7 million payment from Heidelberg to Presstek; (2) failure to disclose the nature, depth and targets of an SEC investigation into dealings in Presstek stock; and (3) reporting revenue and net income figures that were not developed in accordance with generally accepted accounting principles ("GAAP") and that were overstated as compared to GAAP-compliant figures.

A number of the allegedly misleading statements or omissions were published in issues of the CML or in a research report distributed on November 24, 1995, by the investment firm

5

Pennsylvania Merchant Group, Ltd. (the "PMG report"). The PMG report was based in part on information obtained in an interview of Verrando. A draft of the report was reviewed and revised by Robert Howard. Robert Howard also caused Presstek to distribute the PMG report, without any disclaimer, to hundreds of persons on its mailing list, and as part of an information packet sent to investors and others.

## Discussion

Defendants move to dismiss all counts in plaintiffs' Second Amended Complaint except those concerning Presstek's disclosure of its relationship with Heidelberg. Defendants concede that the complaint states a claim against Verrando and Robert Howard with respect to Heidelberg, but say that the Second Amended Complaint fails to state a claim against any of the other individual defendants. Defendants have not moved to dismiss claims against the individual defendants based on alleged violations of § 20A of the Exchange Act.

1. The Entanglement Claims.

Defendants seek dismissal of plaintiffs' "entanglement claims," i.e., the claims asserting defendants' liability for misstatements or omissions in the CML and PMG report, on grounds that such claims are barred by the statute of limitations. Defendants do not argue that the original complaints, filed in June and July, 1996, and subsequently consolidated in this

action[4] were not timely filed.  Rather, they argue that plaintiffs abandoned any entanglement claims when they filed, on April 4, 1997, a Substituted Consolidated Amended Class Action Complaint (the "First Amended Complaint")[5] because that pleading did not assert an entanglement theory.  Defendants then argue that the statute of limitations on plaintiffs' abandoned entanglement claims ran before plaintiffs attempted to reassert them in the Second Amended Complaint, filed February 20, 1998.  Accordingly, defendants argue, plaintiffs' attempt to revive such claims in their Second Amended Complaint is barred by the statute of limitations.

The argument is similar to that made, and rejected, in <u>Ross v. Philip Morris Co.</u>, 164 F. Supp. 683 (W.D. Mo. 1958).  There the plaintiff sued defendant for personal injuries allegedly caused by the defendant's product.  The original complaint alleged "negligence, willful misrepresentation, breach of warranty, and violation of certain State statutes" as theories of recovery.  <u>Id</u>. at 685.  Plaintiff later amended his complaint to allege only breach of warranty.  Plaintiff then brought a third

---

[4]This action consolidated the following cases: <u>Tonia Alfonso, et al. v. Presstek, Inc., et al.</u>, D.N.H., C-96-352-M; <u>Bill Berke v. Presstek, Inc., et al.</u>, D.N.H., C-96-347-M; <u>Sidney Gellman, et al. v. Presstek, Inc., et al.</u>, D.N.H., 96-373-JD; <u>Joseph C. Barton v. Presstek, Inc., et al.</u>, S.D.N.Y., 96-5172; <u>F. Brock Walter v. Presstek, Inc., et al.</u>, D.N.H. 96-377-M; <u>Multi-Measurements, Inc., et al. v. Presstek, Inc., et al.</u>, D.N.H. 96-411-JD.

[5]A Consolidated Class Action Complaint was filed on March 14, 1997, but was returned to plaintiffs; The First Amended Complaint was filed in its place.

amended complaint alleging three counts: (1) implied warranty;
(2) negligence; and (3) fraud and deceit.  Defendant moved for
summary judgment on counts two and three arguing that plaintiff
had "abandoned such claims two years and five months ago, and,
since such abandonment, the statute of limitation has run and
plaintiff cannot now reassert such claim."  Id. at 689.  The
court held:

> A change of the legal theory of an action is not
> to be accepted as a voluntary non-suit of a claim under
> federal procedure. "Basically, the general wrong
> suffered and the general conduct causing the wrong are
> the controlling considerations." That being so, then it
> is manifest that at no time has plaintiff ever
> abandoned the original claim he has here asserted
> against defendant.  To abandon a claim can only mean
> that one gives it up with the intent of never claiming
> one's right or interest in it thereafter.  Plaintiff
> has changed his theories of claim in respect to his
> cause of action against defendant, but, he has never
> abandoned it.  Though counts two and three, supra, may,
> present new issues of law, the evidence which will be
> offered by plaintiff in support thereof will not be
> materially different from that which could have been
> adduced under the original, or any subsequent,
> complaint filed herein.

Id. (citations omitted).

Plaintiffs' position in this case is even stronger than in
Ross, for while plaintiffs may have asserted different legal
theories in the Second Amended Complaint,[6] they never ostensibly
abandoned the claims made in the original complaints.  In Barton,
for example, the plaintiffs pled a pre-publication entanglement
theory, alleging that defendants disseminated misinformation to
investors by feeding false statements to publishers of market

---

[6]But see the discussion on relation back infra.

8

newsletters, who then published the misinformation to their subscribers.[7]  In the First Amended Complaint, plaintiffs alleged:

> Presstek regularly communicated with the investing public through the dissemination of various reports, participated in meetings and conferences with investors and securities analysts and through other customary means of communicating such as use of major newswire services for the dissemination of press releases and providing information and interviews about the Company to the business media including, without limitation, to the Cabot Newsletter Defendants.[8]

The court cannot agree that plaintiffs abandoned their entanglement claims when they filed the First Amended Complaint.

The real question is whether the entanglement claims pled in plaintiffs Second Amended Complaint relate back to one or more of the original complaints.  Whether an amended complaint relates

---

[7]See, e.g., Barton compl. at ¶ 39:
"As part of their scheme to defraud purchasers of Presstek common stock during the Class Period, certain officers and directors of Presstek, including the Presstek Defendants, communicated regularly with publishers of market letters to discuss, among other things, the Company's prospects, operating results and expected revenues, and to provide detailed 'guidance' and direction to these editors with respect to the Company's business and projected revenues and earnings. Presstek and the Presstek Defendants knew that by participating in these regular periodic communications with publishers of market letters, they could disseminate false information to the investment community and that investors, including the members of the plaintiff class would rely and act upon such information.  Certain of the Presstek Defendants had communications with publishers of market letters in order to cause or encourage them to issue favorable reports on Presstek and used these communications to falsely present Presstek's prospects to the marketplace to artificially inflate the market price of Presstek common stock."

[8]First Amended Complaint at ¶ 77c;

9

back to the original complaint for statute of limitations purposes is determined according to Federal Rule of Civil Procedure 15(c).  Rule 15(c) provides, in pertinent part: "An amendment of a pleading relates back to the date of the original pleading when . . . (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  Fed.R.Civ.P. 15(c).  "The test for determining whether the amendment should relate back is whether the original complaint sufficiently put the defendants on notice regarding the claim raised in the amended pleading."  Ripley v. Childress, 695 F. Supp. 507, 509 (D.N.M. 1988).

Defendants contend that even if plaintiffs did not abandon their entanglement claims, the claims in the Second Amended Complaint do not relate back because they are based on different operative facts.  Defendants argue that the Second Amended Complaint bases its entanglement claim on "facts and theories never alleged in any of the prior complaints and of which the [defendants] had no notice."[9]  Specifically, defendants assert that while the Alfonso and Barton complaints alleged that the defendants provided false information to the Cabot Newsletter Defendants before the misleading CMLs were published, the Second Amended Complaint abandoned that theory and instead alleged that the defendants adopted the CMLs' misleading statements post-publication by distributing CMLs to investors.

---

[9]Defendants' brief at 24.

The claims before and after consolidation are not so distinct. The Second Amended Complaint continues to allege that Presstek communicated with the public by providing information to analysts who presumably would then convey it:

> Presstek regularly communicated with the investing public through the dissemination of various reports, including without limitation, the [CML] and the [PMG report], <u>participating in meetings and conferences with investors and securities analysts</u>, and through other customary means of communicating such as use of major newswire services for the dissemination of press releases, and filings with the SEC.[10]

Conversely, allegations in the original <u>Gellman</u> complaint could be read to allege post-publication ratification of misleading statements: the <u>Gellman</u> complaint alleged that the individual defendants "were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements alleged herein, were aware that the false and misleading statements were being issued regarding the Company and approved or ratified these statements, in violation of the federal securities laws."[11] It also alleged that "Presstek regularly communicated with the investing public through the dissemination of various reports . . . ."[12]

That the Second Amended Complaint more specifically alleges that Presstek distributed copies of a particular report (<u>e.g.</u>, the CML) in investor packets and to persons on its mailing list

---

[10]Second Amended Complaint at ¶ 67c; <u>see also</u> <u>Gellman</u> compl. at ¶ 42c.

[11]<u>Gellman</u> compl. at ¶ 26.

[12]<u>Gellman</u> compl. at ¶ 42c.

11

does not fatally alter the complaint.  "[I]f the original pleading gives fair notice of the factual situation from which the claim or defense arises, an amendment which merely makes more specific what has already been alleged . . . will relate back even if the statute of limitations has run in the interim."  Mann v. Duke Mfg. Co., 166 F.R.D. 415, 417 (E.D. Mo. 1996).

Under the same reasoning, the allegations in the Second Amended Complaint regarding the PMG report relate back to one or more of the original complaints even though the PMG report had never before been mentioned by name.[13]  Defendants had notice all along that plaintiffs sought to hold them liable for misleading statements contained in various reports including, but not limited to, the CML.  More specific factual allegations naming one of those reports properly relate back to one or more of the original complaints.  See id.

2.  Adoption of analysts' reports.

Defendants argue that they did not adopt the misleading statements or omissions in the CMLs by merely distributing them. The First Circuit "has not yet decided whether statements in an analyst's report may be attributable to a defendant company." Suna, 107 F.3d at 73 (assuming, without deciding, that such a claim is cognizable).  Other courts, however, have recognized

---

[13]Although the date on which the PMG report was issued does not fall within the Barton class period, the Barton complaint contains allegations of conduct by defendant, including reviewing and approving drafts of market letters not limited to the CML, that closely match the PMG report allegations in the Second Amended Complaint.  See Barton compl. at ¶¶ 36-44.

12

that a company may "sufficiently entangle[] itself with the analysts' forecasts [so as] to render those predictions 'attributable to it.'" Elkind v. Ligget & Myers, Inc., 635 F.2d 156, 163 (2d Cir. 1980). Liability may be premised on pre-publication or post-publication involvement with the analyst's report. In the case of post-publication ratification, "in contrast to pre-publication entanglement, liability does not depend upon imputing the analysts' statements to the company. Rather, the corporation's implied representation that the analysts' forecasts are accurate is itself actionable. This is a subtle, yet important distinction between pre-publication adoption and post-publication ratification." In re Cypress Semiconductor Sec. Litig., 891 F. Supp. 1369, 1377 (N.D. Cal. 1995). Thus to the extent that defendants' argument may be taken to suggest that post-publication distribution of an outside analyst's report cannot constitute sufficient involvement to hold the corporation liable, the court disagrees. See id. ("Distributing analysts' reports to potential investors may, depending on the circumstances, amount to an implied representation that the reports are accurate."); cf. In re RasterOps Corp. Sec. Litig., 1994 WL 618970 (N.D. Cal.) at * 3 (finding allegations that corporation circulated analyst reports, together with allegations of pre-publication entanglement, sufficient to plead adoption of the reports).

Defendants also argue that plaintiffs' allegations regarding the CMLs fail to satisfy the specificity requirements of Federal

13

Rule of Civil Procedure 9(b). "Rule 9(b) requires that plaintiffs (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Suna, 107 F.2d at 73 (internal quotation marks omitted). Plaintiffs must also allege facts "suggesting that the defendants knew or should have known that the statement was false or misleading, i.e., evidence of scienter." Schaffer, 924 F. Supp. at 1314.

In paragraph 72 of the Second Amended Complaint, plaintiffs identify three editions of the CML which contained earnings projections that "far exceeded" Presstek's internal projections: April, 1994, edition, predicting earnings of $1.00 per share; January, 1995, edition, predicting $0.90 per share; and April, 1995, edition, predicting $1.10 per share). The complaint then alleges:

> Robert Howard knew, or was reckless in not knowing, that Presstek's contemporaneous internal projections were materially below those in the [CMLs] identified above. Indeed, a Presstek internal projection prepared four months before the [January, 1995] CML published its projections of income from plate sales, and which assumed more than 100 such presses in the field by 1996, projected that the company would have total earnings from all sales of only $0.23 per share for that year. Nevertheless, in 1994 and 1995, Robert Howard directed Presstek to distribute several thousand copies of these and other editions of the CML in an "investor packet" and to persons on Presstek's mailing lists without disclaimer.[14]

---

[14]Compl. at ¶ 73.

These conclusory allegations are not sufficient to satisfy Rule 9(b). Cf. In re Silicon Graphics, Inc. Sec. Litig., 970 F. Supp. 746, 759 (N.D. Cal. 1997) (noting, with respect to pleading scienter, that the Second Circuit has held "that unsupported general claims of the existence of internal reports are insufficient to survive a motion to dismiss"). Nor can one infer a source of contrary knowledge from other factual allegations in the complaint. These editions of the CML predate the circumstances alleged in the complaint (such as the Heidelberg problems that began after May, 1995) that gave Presstek insiders reason to know that earnings prospects were limited.[15] Plaintiffs fail to state how the defendants knew or should have known that the projections were, as they allege, false, reckless or baseless. See In re Verifone Sec. Litig., 784 F. Supp. 1471, 1487 (N.D. Cal. 1992), aff'd, 11 F.3d 865 (1993).

Plaintiffs allegations regarding CMLs issued in February, 1996, and thereafter are also deficient. With respect to some of the CMLs, plaintiffs fail to state with any specificity why the statements made therein are fraudulent.[16] With respect to others, plaintiffs fail to state how statements allegedly known by the Cabot Newsletter Defendants to be false were also known, or should have been known, to be false by the defendants herein.[17] Moreover, plaintiffs fail to specifically allege that

---

[15]They also predate the Class Period.

[16]See, e.g., compl. at ¶¶ 120, 125, 128

[17]See, compl. at ¶¶ 157, 160-61.

15

any of these later CMLs were circulated by Presstek, or to articulate any other bases on which defendants might be liable for the statements made therein. Therefore, plaintiffs' claims regarding all of the CMLs are dismissed for failure to state a claim.

3. <u>The SEC investigation.</u>

Defendants next argue that disclosures they made regarding the SEC's investigation into certain dealings in Presstek stock were sufficient as a matter of law. The court disagrees. While Presstek disclosed that the SEC had commenced an investigation, its disclosure implied that Presstek did not know who was targeted in the investigation. The complaint alleges that Presstek made the following statement in its 1995 Annual Report:

> "The Company has been advised that the [SEC] has entered a formal order of private investigation with respect to certain activities <u>by certain unnamed persons and entities in connection with the securities of the Company</u>. In that connection, the Company has received subpoenas <u>duces</u> <u>tecum</u> requesting it to produce certain documents and has complied with the requests. <u>The Company has not been advised by the Staff of the [SEC] that the Staff intends to recommend to the [SEC] that it initiate a proceeding against the Company in connection with the foregoing investigation</u>."[18]

Assuming that the defendants knew that they were targets of the investigation, which the complaint seemingly attempts to allege,[19] the disclosure is misleading.

---

[18]Compl. at ¶ 163(b).

[19]The complaint alleges that the defendants engaged in a scheme to "conceal[] . . . the fact that the SEC was investigating Presstek insiders, including defendants named herein, for fraud." Compl. at ¶ 2(e).

16

Defendants' arguments that disclosure of potential litigation was not required are beside the point. If named defendants were then current targets of an SEC investigation into fraud in connection with the company's securities, that information would be material to a reasonable investor. See Freschi v. Grand Coal Venture, 767 F.2d 1041, 1048 (2d Cir. 1985) ("Any reasonable investor would be interested in knowing that the SEC was concerned about possible fraud in connection with a securities offering which the offeror himself described as 'basically similar' to the one under consideration for investment."), vacated on other grounds, 478 U.S. 1015 (1986); modified in other respects on remand, 800 F.2d 305 (2d Cir. 1986), modified in other respects, 806 F.2d 17 (2d Cir. 1986); New Equity Sec. Holders Committee For Golden Gulf, Ltd. v. Phillips, 97 B.R. 492, 499 (E.D. Ark. 1989). Therefore, the court cannot say at this juncture that defendants' disclosure was sufficient as a matter of law.

Defendants do correctly point out, however, that the complaint fails to allege that "at any time during the Class Period, the [defendants] were advised that they were the target of the SEC investigation."[20] Thus, plaintiffs have failed to plead scienter with particularity. Accordingly, plaintiffs' SEC allegations are also dismissed for failure to state a claim.

4. Scienter.

---

[20]Defendants' brief at 11.

Defendants argue that plaintiffs have failed, with respect to each of the individual defendants (again, excepting Verrando and Robert Howard) to allege scienter with sufficient particularity. In a § 10(b) action, "[p]laintiffs must plead specific facts giving rise to a 'strong inference' of fraudulent intent." Maldonado v. Dominguez, 137 F.3d 1, 9 (1st Cir. 1998).[21] Plaintiffs attempt to plead scienter by alleging that defendants engaged in a scheme to defraud and engaged in insider trading.

A. Scheme to Defraud and The Group Pleading Doctrine.

With the exception of Verrando and Robert Howard, plaintiffs have failed to allege with sufficient particularity any defendant's role in the alleged scheme to defraud. Defendants point out that where "multiple defendants are involved, each defendant's role in the fraud must be particularized." Manchester Mfg. Acquisitions, Inc. v. Sears, Roebuck & Co., 802 F. Supp. 595, 600 (D.N.H. 1992) (internal quotations omitted). Plaintiffs counter that they are entitled to rely on the "group pleading doctrine," which posits that "[i]n cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other 'group-published information,' it is reasonable to presume that these are the collective actions of the officers." Wool v. Tandem Computers Inc., 818 F.2d 1433,

---

[21] The court in Maldonado noted that it did not interpret the standard imposed by the Private Securities Litigation Reform Act of 1995 "to differ from that which this court has historically applied." Id. at 9 n.5.

1440 (9th Cir. 1987).  A defendant may rebut the presumption by showing that he was not involved in creating the false or misleading document.  See Silicon Graphics, 970 F. Supp. at 759.

While it has not explicitly adopted the group pleading doctrine wholesale, the First Circuit has cited Wool in holding that "[t]he acceptance of responsibility for the contents of the Annual Report, demonstrated by defendants' signatures, combined with specific allegations that they knew of conflicting conditions, establishes a sufficient link between the defendants and the alleged fraud to satisfy Rule 9(b)'s particularity requirement."  Serabian v. Amoskeag Bank Shares, Inc., 24 F.3d 357, 367-68 (1st Cir. 1994).  The group pleading doctrine will be applied here.

The plaintiffs have failed to allege, however, with one exception detailed below, enough specific facts to take advantage of the group pleading presumption.  Plaintiffs allege that Williams and DiBenedetto signed the November 14, 1995, and the May 10, 1996, Form 10-Q, the March 29, 1996, Form 10-K, and the April 5, 1996, and May 28, 1996, Form S-3s; that Lawrence Howard, Depamphilis and Sparks signed the March 29, 1996, Form 10-K, and the April 5, 1996, and May 28, 1996, Form S-3s; and that Pensavecchia signed the March 29, 1996, Form 10-K, and the April 5, 1996, Form S-3.  However, with one exception, the complaint does not specifically allege that those defendants knew or had reason to know that the statements contained in those documents were false or misleading.  See Serabian, 24 F.3d at 367-68

19

(finding that sufficient connection between the defendants and the fraud was pled where the signing of documents and the knowledge of contrary facts were alleged).

Plaintiffs here allege generally:

> Because of the Individual Presstek Defendants' positions with the Company, they had access to the adverse, non-public information about Presstek's business, finances, products, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts, reports of actual operations compared thereto, its revenue and expense recognition procedures and its communications, negotiations and agreements with Presstek's only significant customer, Heidelberg), via conversations with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information regularly provided to them in connection therewith in their capacity as the officers and directors of Presstek.[22]

These allegations may well prove true — defendants likely did have access to information, but the allegations do not meet the particularity requirements of Rule 9(b).  While plaintiffs have pled "the right buzz words," their allegations "are merely conclusory and as such are insufficient."  In re Aetna Inc. Sec. Litig., 1999 WL 65451 at *11 (E.D. Pa. Feb. 2, 1999).[23]

---

[22]Compl. at ¶ 53; see also compl. at ¶¶ 131-33.

[23]In an apparent attempt to meet the group pleading doctrine's requirement that an outside director must have "either participated in day-to-day corporate activities, or had a special relationship with the corporation," Aetna, 1999 WL 65451 at *11 (internal quotation marks omitted), the complaint alleges:
> The Individual Presstek Defendants, by virtue of their high level positions with the Company, directly participated in the management of the Company, were directly involved in the day to day operations of the Company at the highest levels and were privy to

20

Plaintiffs have pled particular facts with respect to DiBenedetto's knowledge of the accounting deficiencies in the May 10, 1996, Form 10-Q.  Plaintiffs allege that DiBenedetto was specifically advised by Presstek's auditor of the correct accounting procedures for the tax benefit Presstek received from the exercise of certain stock options.[24]  Thus the group pleading doctrine applies to DiBenedetto with respect to the May 10, 1996, Form 10-Q, only.  In all other respects, plaintiffs' group pleading allegations fail.

B. Insider Trading.

The First Circuit has recognized that while "the mere fact that insider stock sales occurred does not suffice to establish scienter . . . [,] allegations of insider trading in suspicious amounts or at suspicious times may permit an inference that the trader – and by further inference, the company - possessed material nonpublic information at the time."  Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1224 (1st Cir. 1996) (citation and internal quotation marks omitted).  Plaintiffs' complaint details each sale made by each individual defendant during the class period, stating the number of shares sold, the price received and the total proceeds from the sale.  Plaintiffs allege that the

_____

confidential proprietary information concerning the Company and its operations, finances, financial condition, products and business prospects as alleged herein.
Compl. at ¶ 55.  These conclusory allegations similarly fail to meet the particularity requirement.

[24]See compl. at ¶¶ 200-208.

21

proceeds from those sales "[were] dramatically greater than their other compensation from their positions with Presstek."[25] Finally, plaintiffs allege:

> The stock sales by defendants during the Class Period were contrary to their prior trading practices and constituted a significant portion of their individual stock holdings. . . .
>     . . .
>     . . . The sales occurred in amounts suspiciously larger than these defendants' prior sales and at suspicious times in the course of the materially false and misleading statements alleged herein.[26]

Defendants say the complaint fails to plead any specific facts tending to show that the sales were suspicious or unusual. Defendants then attempt to demonstrate, through SEC filings by the individual defendants, that, in fact, the insider sales during the Class Period were both consistent with sales volume prior to the Class Period, and constituted an insignificant percentage of the individual defendants' holdings of Presstek stock. The court need not decide, however, whether such extraneous evidence can be considered on a motion to dismiss, cf. Silicon Graphics, 970 F. Supp. at 758 (discussing whether court may review, on a motion to dismiss, SEC filings not part of the pleadings), because the issue can be resolved on the pleadings alone. Having failed to allege any supportive facts tending to reveal the unusual or suspicious nature of individual defendants' trading activity in Presstek stock, other than comparatively

_____

[25]Compl. at ¶ 214.

[26]Compl. at ¶¶ 219-21.

22

large amounts of money involved, plaintiffs have failed to plead with sufficient particularity facts supporting an inference of scienter.

5. <u>Controlling Person Liability</u>.

With respect to the individual defendants (other than Verrando and Robert Howard), plaintiffs claim that they are control persons within the meaning of § 20(a) of the Exchange Act fail to state a claim. In this context, control "generally means 'the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of [an entity], whether through the ownership of voting securities, by contract or otherwise.'" <u>Rand v. M/A-Com, Inc.</u>, 824 F. Supp. 242, 261-62 (D. Mass. 1992) (quoting 17 C.F.R. § 230.405 (1990)). As the <u>Rand</u> court noted, the First Circuit has not yet addressed what elements must be pled to state a prima facie case of control person liability. <u>Id</u>. at 262. In particular, the First Circuit has not addressed whether control person liability requires some culpable participation in the fraudulent acts with which the defendant is charged. <u>Id</u>. In the absence of specific circuit guidance, the court adopts the position taken by the court in <u>Wells v. Monarch Capital Corp.</u>, 1991 WL 354938 at *11 (D. Mass.), that "[t]he plaintiff need not establish . . . culpable participation in his pleadings."

A complaint must allege "at a minimum the control status of the defendant[;] that the controlling person directly or indirectly held the power to exercise control over the primary

violator," Schaffer, 924 F. Supp. at 1322 (internal quotation marks omitted). At least one court has noted, however, that "[t]he burden of showing control status is not particularly onerous." In re Bausch & Lomb, Inc. Sec. Litig., 941 F. Supp. 1352, 1368 (W.D.N.Y. 1996). Thus, while "mere status or position in a company does not conclusively show control status," id., courts have recognized that a position as a high ranking officer "strongly suggest[s]" possession of "power to direct the management and policies" of the corporation and "involve[ment] as well in the preparation and review of [the corporation's] public statements." Food and Allied Service Trades Dep't, AFL-CIO v. Millfeld Trading Co., 841 F. Supp. 1386, 1391 (S.D.N.Y. 1994). Courts have at least been reluctant to resolve the issue on a motion to dismiss. See Bausch & Lomb, 941 F. Supp. at 1368. Thus, although the issue is close, defendants' motion to dismiss the § 20(a) claims against Williams, Pensavecchia, DiBenedetto and Lawrence Howard is denied.

Depamphilis and Sparks, however, were not officers of the company. While director status may be a "'red light' to the court," Kaplan v. Rose, 49 F.3d 1363, 1382 (9th Cir. 1994), "a bare allegation of director status, without more, is insufficient" to plead control person liability. Food and Allied Service, 841 F. Supp. at 1391. Other than conclusory allegations of involvement in the affairs of the company, plaintiffs have pled nothing to support Depamphilis and Sparks' liability as

24

control persons. Plaintiffs' § 20(a) claims against Depamphilis and Sparks are dismissed.

6. Underline(State Law Claims).

Finally, defendants argue that plaintiffs' state law claims should be dismissed for failure to state a claim. Defendants argue that plaintiffs' fraud and negligent misrepresentation claims are inadequate because plaintiffs fail to plead "actual reliance," relying instead on a fraud-on-the-market theory. The court agrees. Actual reliance by the plaintiff is an element of both fraud and negligent misrepresentation causes of action under New Hampshire law. See Snow v. American Morgan Horse Assoc., 141 N.H. 467, 468 (1996); Hydraform Prods. Corp. v. American Steel & Alum. Corp., 127 N.H. 187, 200 (1985). The New Hampshire Supreme Court has not adopted (and is not likely to adopt) the fraud-on-the-market theory of reliance for common law fraud or negligent misrepresentation, and, absent contrary guidance from that court, the federal courts should decline to do so. See, e.g., Wells, 1991 WL 354938 at *13. Accordingly, plaintiffs' state law claims for fraud and negligent misrepresentation are dismissed.

Defendants also move to dismiss plaintiffs' New Hampshire Blue Sky Law claims for all of the reasons warranting dismissal of plaintiffs' §§ 10(b) and 20(a) claims. However, defendants devote no more than a single sentence of their brief to this argument. Because the argument is inadequately briefed, and is undeveloped, the defendants' motion is denied.

Conclusion

25

For the foregoing reasons, defendants' motion to dismiss (document no. 128) is granted in the following respects and denied in all other respects:

1.  Plaintiffs' claims relating to editions of the CML are dismissed;

2.  Plaintiffs' claims related to the SEC investigation disclosure are dismissed;

3.  Plaintiffs' § 10(b) and Rule 10b-5 claims are dismissed as to all individual defendants except Verrando, Robert Howard and, with respect to the accounting allegations only, DiBenedetto;

4.  Plaintiffs' controlling person claims are dismissed as to defendants Depamphilis and Sparks; and

5.  Plaintiffs' state law claims based on fraud and negligent misrepresentation are dismissed.


**SO ORDERED.**


_____
Steven J. McAuliffe
United States District Judge

March 30, 1999

cc:  Edward F. Haber, Esq.
     George R. Moore, Esq.
     Patricia I. Avery, Esq.
     Kevin E. Sharkey, Esq.
     Paul D. Young, Esq.
     Mark L. Mallory, Esq.
     Patricia D. Howard
     Solomon Cera, Esq.
     Barrie L. Brejcha, Esq.
     Kenneth A. Cossingham, Esq.
     Thomas J. Pappas, Esq.
     R. Bruce McNew, Esq.

26